IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHRISTY HOBSON
o/b/o MELODY DIANA KEECH, deceased                                    PLAINTIFF

              v.              Civil No. 2:11-cv-02048-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                        DEFENDANT

**MEMORANDUM OPINION**

I.    **Factual and Procedural Background**

Plaintiff, Christy Hobson, brings this action on behalf of Melody Diana Keech, seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a partially favorable decision of the Commissioner of the Social Security Administration ("Commissioner") regarding her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act").

Plaintiff protectively filed her application on February 15, 2008, alleging a disability onset date of July 19, 2007, due to bipolar II disorder, social phobia, anxiety attacks, mood swings, depression, inability to concentrate, headaches, and chronic obstructive pulmonary disorder ("COPD"). Tr. 49, 125, 133, 166. On the alleged onset date, Plaintiff was forty-five years old with a ninth grade education. Tr. 19, 131, 205, 217, 246. She has past relevant work as a small parts assembler. Tr. 39, 56.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 57-59, 61-62. At Plaintiff's request, an administrative hearing was held on December 22, 2008. Tr. 16-43. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on June 1, 2009, finding Plaintiff was not disabled within the meaning of the Act. Tr. 46-

58.  Subsequently, the Appeals Council granted Plaintiff's request for review and issued a partially favorable decision on January 12, 2011.  Tr. 1-8, 97-100.  Plaintiff now seeks judicial review of that decision.

## II.   **Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion."  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a  medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities;

-2-

(3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## III.   <u>Administrative Decision</u>

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since July 19, 2007, the alleged onset date. Tr. 51. At step two, the ALJ found Plaintiff suffers from the following severe impairments: anxiety, major depressive disorder, and COPD. Tr. 51. At step three, she determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 51-53.

At step four, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except she could only perform work where interpersonal contact is incidental to the work performed and could have no more than moderate exposure to airborne irritants, humidity, and extreme temperatures. Tr. 53-55.

After eliciting vocational expert testimony, the ALJ found that Plaintiff was capable of performing her past relevant work as a small parts assembler. Tr. 39-40, 56, 182-184. Accordingly, the ALJ determined Plaintiff was not under a disability from July 19, 2007, the alleged onset date, through June 1, 2009, the date of her decision. Tr. 56.

Subsequently, the Appeals Council granted Plaintiff's request for review. Tr. 97-100. In a partially favorable decision dated January 12, 2011, the Appeals Council affirmed the ALJ's findings for the period before April 12, 2009, but determined Plaintiff's impairments met Listing 13.14B beginning on April 12, 2009.[1] Tr. 1-8. Thus, the Appeals Council determined Plaintiff was disabled from April 12, 2009, through April 2010, the month before the month of her death. Tr. 6.

## IV.   Discussion

The court's review concerns only the period between July 19, 2007, the alleged onset date, and April 11, 2009, the day before the Appeals Council found Plaintiff disabled. On appeal, Plaintiff contends the ALJ erred by: (A) improperly determining her RFC; and (B) finding she could return to her past relevant work as a small parts assembler. *See* Pl.'s Br. 10-19. For the following reasons,

---

[1] Beginning on April 12, 2009, Plaintiff was hospitalized on numerous occasions with recurrent hyponatremia, or low sodium. Tr. 373-550, 641-688. Plaintiff with diagnosed with persistent hyponatremia secondary to syndrome of inappropriate secretion of antidiuretic hormone production ("SIADH"). Tr. 378, 582. After extensive testing, Plaintiff with diagnosed with small cell lung cancer, extensive stage, in January 2010. Tr. 613-636. She was treated with chemotherapy. Tr. 613-636. On May 12, 2010, Dannita Robertson, a licensed master social worker at Peachtree Hospice, wrote a letter to the Administration, stating Plaintiff had received a terminal diagnosis of lung cancer with a prognosis of six months or less to live. Tr. 190.

On June 4, 2010, Gerald I. Bell, M.D., reviewed the medical evidence pertaining to Plaintiff's small cell lung cancer and found the following:

> In summary, her condition was dominated by persistent and symptomatic hyponatremia secondary to syndrome of inappropriate antidiuretic hormone production (SIADH). This was first noted 4/12/2009. This condition required repeated emergency room visits and hospitalization. The normal evaluation of this condition includes search for malignancies, particularly lung or head/neck region. In this case, no malignancies could be found. However, it should be noted that one type of lung carcinoma, Small-cell (oat cell), frequently associated with SIADH [,] is very often difficult to detect early. It is possible that hyponatremia secondary to SIADH was [the] first manifestation of Small cell lung carcinoma. If this premise is accepted patient met listing 13.14B for Small-cell lung carcinoma on 4/12/2009. There were no restrictions in her functional capacity until 1/6/2009[,] when she was described at a medium level. She would continue at that level until 4/12/2009[,] when she met listing criteria 13.14B.

Tr. 689-690.

the court finds that substantial evidence supports the ALJ's decision.

### A. RFC Determination

At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

### 1. Side Effects of Medication

Plaintiff argues that the ALJ did not adequately account for the side effects of her medications, including fatigue and drowsiness. *See* Pl.'s Br. 11-12. Specifically, Plaintiff testified at the administrative hearing that she slept fourteen to sixteen hours a day partly due to the side effects of her medications. Tr. 33. Plaintiff also reported drowsiness and lack of energy in her disability paperwork. Tr. 130, 134, 152-153.

The undersigned is not persuaded by Plaintiff's argument. Notably, with the exception of two occasions, Plaintiff did not complain of any medication side effects to her treating physicians. *Johnston v. Apfel,* 210 F.3d 870, 873 (8th Cir. 2000) (claimant did not report any medication side effects to her treating physicians). On October 8, 2007, Plaintiff reported to Robert Baker, M.D.,

that Cymbalta caused fatigue.  Tr. 303.  However, on February 15, 2008, Plaintiff reported to Beth Tosh, APN, that Geodon made her nervous, but Cymbalta and Vistaril were somewhat helpful.  Tr. 257.  She specifically reported no other side effects from Cymbalta or Vistaril.  Tr. 257.  Ms. Tosh discontinued Geodon and prescribed Abilify.  Tr. 257.  There is no indication that Plaintiff reported any negative side effects from Abilify.  The objective evidence of record does not substantiate Plaintiff's reports of severe drowsiness and fatigue secondary to her medications and, thus, does not warrant additional limitations beyond the ALJ's RFC determination.

### 2.  Mental Limitations

Plaintiff contends the ALJ failed to adequately account for her mental limitations.  *See* Pl.'s Br. 12-16.  On July 18, 2007, Plaintiff presented to Sparks Regional Medical Center ("Sparks") with complaints of suicidal ideation, stress, anxiety, and depression.  Tr. 280-288.  Plaintiff had reportedly written a suicide note and planned to overdose on her medication.  Tr. 283.  Subsequently, Plaintiff was transferred from Sparks to Living Hope Institute.  Tr. 193-207.  On intake, Plaintiff stated she had a history of depression beginning in her twenties and had been very depressed for five months.  Tr. 196, 203.  She admitted having suicidal thoughts and a plan to overdose on her medication.  Tr. 203.  When asked about her childhood, Plaintiff stated she had been physically and sexually abused.  Tr. 203-204.  When asked about work, Plaintiff stated she had worked at Whirlpool for twenty-three years, but frequently missed work due to stress and "just not feeling well."  Tr. 205.  Plaintiff was diagnosed with bipolar disorder by history, currently depressed, and given a Global Assessment of Functioning ("GAF") score of 25.  Tr. 206-207.

On July 21, 2007, Plaintiff underwent a psychiatric evaluation with Melanie Conway, M.D.  Tr. 195-198.  Plaintiff reported that her biggest stressor was her job and the people at her job.  Tr.

197.  On examination, Plaintiff was depressed and tearful throughout the interview with some psychomotor agitation.  Tr. 197.  Thought processes were rational, relevant, and goal-directed, although thought content was notable for suicidal ideation.  Tr. 197.  Plaintiff reported a history of auditory hallucinations.  Tr. 197.  Dr. Conway diagnosed Plaintiff with major depression with psychotic features, polysubstance dependence in full sustained remission, and rule out borderline personality traits.  Tr. 197.  She estimated Plaintiff's GAF score at 25.  Tr. 197.  Dr. Conway prescribed Cymbalta, Geodon, and Vistaril.  Tr. 198.  Plaintiff was discharged from Living Hope on July 26, 2007, in stable condition with no suicidal ideation.  Tr. 194-195.  She was referred for outpatient treatment at Western Arkansas Counseling and Guidance Center ("WACGC").  Tr. 194-195.

On November 9, 2007, Plaintiff presented to WACGC for treatment.  Tr. 246-265.  On intake, Plaintiff was diagnosed with bipolar II disorder by history and rule out post-traumatic stress disorder ("PTSD").  Tr. 248.  Her GAF score was estimated at 45.  Tr. 248.  Plaintiff received individual therapy and medication management services.  Kristen Eckelhoff, PsyD., counseled Plaintiff regarding work anxiety and depression due to the recent death of her mother and stepfather in a house fire.  Tr. 252-254.

On January 14, 2008, Plaintiff reported that she had extreme general anxiety, but no panic attacks since she had been on medical leave.  Tr. 249.  She reported depression symptoms, but denied recent auditory or visual hallucinations.  Tr. 249.  Plaintiff admitted having occasional suicidal thoughts, but none at the time.  Tr. 249-250.  Bethany Tosh, an advanced practice nurse, diagnosed Plaintiff with PTSD, major depressive disorder, recurrent without psychotic features, and rule out bipolar II disorder, by history.  Tr. 250.  Ms. Tosh estimated Plaintiff's GAF score at 45.

Tr. 251.  She instructed Plaintiff to continue taking Cymbalta, Vistaril, and Geodon.  Tr. 251.

On February 15, 2008, Plaintiff reported that Geodon made her nervous, but Cymbalta and Vistaril were somewhat helpful.  Tr. 257.  She reported no other side effects.  Tr. 257.  Ms. Tosh discontinued Geodon and prescribed Ability.  Tr. 257.  On February 22, 2008, Dr. Eckelhoff wrote a letter indicating that Plaintiff had been diagnosed with bipolar II disorder and social phobia, both of which made it very difficult for her to be efficient and productive in a work environment.  Tr. 211.  Dr. Eckelhoff further stated that she supported Plaintiff's efforts to obtain disability.  Tr. 211.

On May 22, 2008, Plaintiff was discharged from therapy for failing to contact the staff in ninety days.  Tr. 265.  She was discharged from treatment with diagnoses of rule out PTSD and social phobia, and given a GAF score of 55.  Tr. 259.

On April 23, 2008, Plaintiff underwent a mental diagnostic evaluation with Kathleen Kralik, Ph.D.  Tr. 215-222.  On examination, Plaintiff appeared depressed and tearful at times.  Tr. 218.  Affect was appropriate to speech content and range was within normal limits.  Tr. 218.  Plaintiff seemed inattentive, repeatedly giving vague responses and seeming to lack organization.  Tr. 218.  She reported a history of command hallucinations telling her to hurt herself, but denied any recent hallucinations.  Tr. 218, 220.  Dr. Kralik estimated Plaintiff's intelligence to be within the low average range.  Tr. 218.  Processing speed was slow, with evident difficulties focusing and a tendency to respond impulsively without regard to accuracy.  Tr. 218.  Dr Kralik noted that Plaintiff had sustained working in "a very stressful manufacturing environment" for twenty-three years and had not made "a convincing case" that her symptoms had altered so significantly that she could no longer engage in any type of employment.  Tr. 220.

Dr. Kralik diagnosed Plaintiff with recurrent major depression of moderate severity without psychotic features (but characteristically with mood-congruent psychotic features when depression worsens), anxiety disorder not otherwise specified, allegedly with panic symptoms, and dependent personality disorder, severe.  Tr. 220.  She estimated Plaintiff's GAF score at 45-55 relative to her current lack of structure.  Tr. 220.  She noted that Plaintiff did not exhibit symptoms consistent with bipolar disorder or borderline personality disorder.  Tr. 215, 220.

Dr. Kralik determined Plaintiff was somewhat impaired regarding activities of daily living, but was able to communicate and interact in a socially adequate manner, communicate in an intelligible and effective manner, cope with the typical mental/cognitive demands of basic work-like tasks, and sustain persistence in completing tasks.  Tr. 220-221.  She noted that Plaintiff's ability to attend and sustain concentration on basic tasks seemed problematic.  Tr. 221.  She also noted mild impairment in Plaintiff's ability to complete work-like tasks within an acceptable time frame.  Tr. 221.  Regarding validity, Dr. Kralik suspected some malingering/exaggeration, as Plaintiff did not appear to put forth adequate effort in exerting attention to questions or tasks.  Tr. 222.

After reviewing the medical evidence of record, the undersigned finds that substantial evidence supports the ALJ's determination.  Although Plaintiff received inpatient treatment at Living Hope, her symptoms improved with therapy and medication.  *Renstrom v. Astrue,* 680 F.3d 1057, 1066 (8th Cir. 2012) (claimant's symptoms improved with treatment); *Brown v. Astrue,* 611 F.3d 941, 955 (8th Cir. 2010) (an impairment that can be controlled by treatment or medication cannot be considered disabling).  On December 7, 2007, Plaintiff reported feeling somewhat better with less depression.  Tr.253.  On January 14, 2008, Dr. Eckelhoff noted that Cymbalta and Vistaril had been somewhat helpful in controlling Plaintiff's depression and anxiety symptoms.  Tr. 251.  On January

-9-

21, 2008, Plaintiff reported that she had more energy during the day and was able to accomplish more.  Tr. 254.  On February 5, 2008, Dr. Eckelhoff noted that Plaintiff was less depressed and more assertive.  Tr. 255.  Notably, Plaintiff failed to return for treatment after February 2008 and was discharged from services on May 22, 2008.  Tr. 265.  At the time of discharge, Plaintiff's GAF score was estimated at 55, indicating moderate limitations.[2]  Tr. 259.

The ALJ discounted Dr. Eckelhoff's opinion because it was inconsistent with other evidence in the record, specifically Dr. Kralik's observations that Plaintiff was exaggerating her symptoms and not putting forth full effort on mental examination tasks.  Tr. 54, 222; *Baker v. Barnhart,* 457 F.3d 882, 892 (8th Cir. 2006) (ALJ was entitled to draw conclusions about claimant's credibility based on evidence that claimant was exaggerating symptoms and giving less than full effort).  Dr. Kralik also noted that Plaintiff had sustained working in a stressful manufacturing environment for twenty-three years despite her reported depression and anxiety, and had not made a convincing case that her symptoms had altered so significantly that she could no longer engage in any type of employment.  Tr. 220.  The ALJ properly considered all the relevant evidence concerning Plaintiff's mental impairments and concluded that she could perform unskilled work where interpersonal contact is incidental to the work performed.  Thus, substantial evidence supports the ALJ's decision.

    3.  Environmental Restrictions

Plaintiff argues that the ALJ did not adequately account for her environmental limitations. *See* Pl.'s Br. 16-18.  Dr. Baker first diagnosed Plaintiff with COPD on August 21, 2007.  Tr. 304. Plaintiff was also treated for frequent bronchitis, and Dr. Baker recommended smoking cessation and provided samples of Proair.  Tr. 300, 302, 305.  Spirometry testing, dated October 31, 2008, revealed

---

[2] A GAF of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed., 2000).

a pre-drug FEV1 score of 1.44 and a post-drug FEV1 score of 1.57, which was consistent with moderate COPD obstruction.  Tr. 273.

On December 4, 2008, Plaintiff underwent a consultative physical examination with Stanley Reyenga, M.D.  Tr. 352-364.  Plaintiff reported a history of depression and bipolar disorder, and Dr. Reyenga noted a recent diagnosis of COPD.  Tr. 353.  Plaintiff's medications included Cymbalta, Abilify, Risperdal, Hydrocodone, and Albuterol.  Tr. 353.  On examination, Dr. Reyenga noted wheezing, but no other lung abnormalities.  Tr. 355.  Plaintiff's physical examination was unremarkable. Tr. 352-357.  Dr. Reyenga diagnosed Plaintiff with bipolar disorder, social anxiety disorder, COPD, and chronic recurrent wrist pain.  Tr. 357.  Due to COPD and multiple medications, Dr. Reyenga determined Plaintiff could frequently be exposed to driving a motor vehicle and vibrations, occasionally be exposed to humidity and wetness, dust, odors, fumes, pulmonary irritants, and extreme cold and heat, and never be exposed to unprotected heights and moving mechanical parts.  Tr. 363.

The court recognizes that, subsequent to the ALJ's decision, Plaintiff was diagnosed with small cell lung cancer and has since passed away.  Tr. 613-616.  The Appeals Council determined Plaintiff met the requirements of Listing 13.14B beginning on April 12, 2009.  Tr. 1-8.  However, the issue before the court is the evidence of Plaintiff's lung impairments prior to April 12, 2009. Here, the evidence establishes moderate COPD limitations during the relevant time period, and the ALJ properly determined Plaintiff could perform work requiring no more than moderate exposure to airborne irritants, humidity, and extreme temperatures.  Tr. 53.  Notably, Dr. Bell reviewed the medical evidence and determined that Plaintiff had no restrictions in her functional capacity until January 6, 2009, when she was at the medium functional capacity level.  Tr. 690.  He found that

Plaintiff continued to be at that level until April 12, 2009, when she met the listing criteria for 13.14B. Tr. 690. For these reasons, substantial evidence supports the ALJ's RFC assessment.

### B. Past Relevant Work

Finally, Plaintiff argues that the ALJ erred in finding she could return to her past relevant work as a small parts assembler. *See* Pl.'s Br. 18-19. At step four of the sequential evaluation, the ALJ must consider whether a claimant's impairments prohibit her from performing her past relevant work. *Jones v. Chater,* 86 F.3d 823, 826 (8th Cir. 1996) (citing 20 C.F.R. § 404.1520(e)). The ALJ will find that a claimant is not disabled if she retains the RFC to perform: (1) the actual functional demands and job duties of a past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers in the national economy. *Jones*, 86 F.3d at 826 (quoting Social Security Ruling ("S.S.R.") 82-61); *See Martin v. Sullivan,* 901 F.2d 650, 653 (8th Cir. 1990). The regulations provide that an ALJ may elicit testimony from a vocational expert in evaluating a claimant's ability to perform past relevant work. *Wagner v. Astrue,* 499 F.3d 842, 853-854 (8th Cir. 2007) (citing 20 C.F.R. § 404.1560(b)(2)).

Here, the vocational expert characterized Plaintiff's past relevant work as a small parts assembler, which is a light, unskilled job with an SVP of 2. Tr. 39. He further determined that, based on the ALJ's RFC and Plaintiff's description of her prior work, Plaintiff could return to her past relevant work as it was actually performed. Tr. 39-40, 182-183. Therefore, the vocational expert's response provides substantial evidence to support the ALJ's finding that Plaintiff retained the RFC to perform her past relevant work as a small parts assembler. *See Roe v. Chater,* 92 F.3d 672, 675 (8th Cir. 1996) (testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence). Thus, the undersigned finds no error.

**V.**     **Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed.  Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 24th day of August 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE